### SIMMONS et al. v. STANDARD OIL CO. OF NEW YORK et al.

(Circuit Court, N. D. New York.    July 30, 1894.)

No. 5,957.

**1. PATENTS—PRIOR USE—EVIDENCE TO ESTABLISH.**

The defense of prior use and sale must be established beyond a reasonable doubt, and a patent will not be overthrown when the evidence is so uncertain, conflicting, and unreliable that it is impossible to say which of the rival devices first saw the light.

**2. SAME—INFRINGEMENT—IMPROVEMENTS.**

The fact that defendant's machine may be an improvement on the patent, and has introduced some novelties, does not avoid infringement, when the principal features of complainant's invention have been appropriated.

**3. SAME—BARREL-HOOPING MACHINES.**

The Glankler patent, No. 439,142, for an improvement in barrel-hooping machines, whereby the end or chine hoop may be put on without bending or crinkling, *held* valid, and its claims entitled to liberal construction, and infringed by machines appropriating the salient operative features of the patented device.

This was a suit by William W. Simmons and John L. Wellford against the Standard Oil Company of New York and the Acme Oil Company for infringement of a patent.    On final hearing.

Phillip, Munson & Phelps and Frederick G. Fincke, for complainants.

W. Bakewell & Sons and Charles A. Talcott, for defendants.

COXE, District Judge.    This is an equity suit for infringement of letters patent No. 439,142, dated October 28, 1890, application filed February 8, 1890, granted to Frank Glankler, for an improvement in barrel-hooping machines.    The patent is for an improvement on a machine covered by a prior patent, No. 420,683, granted to the same inventor February 4, 1890, application filed October 10, 1888.    In the earlier of these patents (No. 420,683) the inventor recites that prior to his invention there was no machine capable of driving the end or chine hoop of a barrel.    This hoop being thin, flaring, and difficult to drive, and having no support from the barrel, was crimped or bent at the edges where the hooked drivers, used in the old machines for pulling the hoop in place, bore against it.    No suitable machine being in existence these hoops were driven usually by hand.    Glankler started with the type of machine shown in letters patent No. 37,719, granted to Edward Holmes for an improvement in hoop-driving and barrel-crozing machines, granted February 17, 1863.    The Holmes machine was successfully used for driving the bilge and quarter hoops.    By combining the hooked arms of this machine with a stout ring interposed between the pulling hooks and the barrel hoop, Glankler obviated in a great measure the difficulties just mentioned.    The specification says:

"The invention consists in the combination, with the hooked arms, or drivers, of a ring or annular platen, which is made to fit beneath the hooks of the arms and to rest upon the edge of the hoop, so that the strain of the arms, instead of being concentrated upon the edge of the hoop at isolated points, will be uniformly distributed around its entire circumference, which permits the end hoop to be forced on the barrel without being injured or mutilated by the driving strain."

Although the flat ring was an improvement upon previous contrivances and upon the hand, or chine maul, process, it was still incomplete and impracticable, and its use frequently resulted in bending the edges of the hoop. The invention of the patent in suit (No. 439,142) is an improvement upon the platen of the prior patent, (No. 420,683)—

"Whereby the hoop is not driven entirely on the barrel, but is allowed to project a little beyond the chine or ends of the staves. * * * The ring or platen is formed with a groove in its lower face, which is designed to receive the chine hoop when the application of power is made to drive on the hoop. On the inner side of the ring next to the chine of the barrel the ring has a stop flange or rim, which is designed to strike the chine of the barrel and arrest the further movement of the ring before the hoop is fully driven on. The bottom of the groove is also inclined, the side of the groove next to the flange being shallowest and the outer side of the groove being deepest. The object of this inclination of the bearing-surface for the hoop is to produce an outward strain on the upper edge of the hoop in driving it on, and thus prevent its top edge from curling inwardly, which it would have a tendency to do on account of the taper of the hoop. After the hoop is driven on to the extent shown—i. e., with an eighth or a quarter of an inch of the hoop projecting—the barrel is stored away, and when it is required for use any opening which may have taken place from shrinkage is closed up by driving the hoop its full distance on the staves by means of a flat ring, as shown in my previous patent, or by hand. In making use of my invention the stop flange or rim need not be continuous, but may be broken or cut away at intervals. The metal of the ring on the outside of the groove may also be cut away, if desired. I may also in some cases use a disk; or I may dispense with a continuous ring-shaped platen and construct a series of segmental platens, each having the inner edge arranged to strike the chine of the barrel before the hoop is fully driven on."

The device is not at all complicated and may be clearly comprehended by an examination of the following diagram, showing a sectional view taken through the ring and the chine of the barrel.

The inclined bearing-surface tends to produce an outward strain and prevents the hoop from being curled inwardly or broken down.

The stop-rim prevents the hoop from being driven fully down and leaves a small portion of the hoop—uniform as to all the barrels—projecting above the chine of the barrel. These—the inclined bearing-surface and the stop-rim—are the principal features of the invention.

The claims are as follows:

"(1) A platen for a hoop-driving machine having on its inner surface a flange or stop-rim, a, extending inside and below the bearing for the hoop, substantially as described. (2) A ring on platen for a hoop-driving machine having an abutting flange or stop-rim, a, for the chine, and a bearing-surface above it for the hoop, substantially as shown and described. (3) A ring or platen for a hoop-driving machine having a bearing-surface, b, for the hoop arranged upon an incline, as described, to produce an upward strain on the upper edge of the hoop to counteract its tendency to curl inwardly, as set forth. (4) A ring or platen for a hoop-driving machine having an inner abutting flange or stop-rim, a, for the chine, and an inclined bearing, b, for the edge of the hoop, substantially as shown and described."

The defenses are anticipation, want of patentability and noninfringement.

A number of prior patents are introduced in evidence and discussed in the defendants' brief. Some of these patents are not pleaded in the answer and are offered only to show the prior art. It is not pretended that any of them anticipates, and, when it is remembered that the complainants' patent is confined to the peculiar features described and claimed, it cannot be said that, singly or combined, they operate to restrict materially the field of invention. They do not show an annular platen, continuous or segmental, having a stop-rim or an inclined bearing-surface. They do not show any successful method of driving a chine hoop.

The principal defense is prior use at Cincinnati and Chicago. The rule applicable to this defense is well known. It must be established beyond a reasonable doubt. Both parties invoke this rule. The complainants insist that, tested by it, the proof of what was done at Cincinnati and Chicago falls far short of anticipation. The defendants, on the contrary, maintain that they have proved that the invention was used prior to the date of the application, and that the attempt of the complainants to carry the invention back to an earlier date has failed; at least it has not been successful beyond a reasonable doubt. The complainants have introduced a mass of testimony to show that Glankler conceived the invention in the autumn of 1888—months prior to the alleged use at Cincinnati and Chicago. This testimony, notwithstanding numerous contradictions and discrepancies, is upon the whole so full and circumstantial that it would be accepted as conclusive were it not for the fact that Glankler himself failed to appear as a witness. No sufficient reason is given for his nonappearance. It was, apparently, without excuse, and leaves room to doubt the accuracy of the complainants' dates and the correctness of their conclusions. No matter from what point of view the question is approached, there is always the suspicion that if Glankler could have corroborated this testimony he would have done so. The unfavorable impression thus produced is in no wise diminished by the refusal of the witness

Wellford to answer several questions which might have thrown some light upon the controversy. In these circumstances the court hesitates to find the date of the invention as early as October or November, 1888. Before the defendants' testimony as to the Chicago use was taken, Wellford was asked on cross-examination to give the date of the invention, and gave it as early in the year 1889. He had no data before him and did not pretend to perfect accuracy, but was confident that the machine was perfected and in operation early in 1889. Assuming that the effort to carry the invention still further back has not been entirely successful within the rule referred to, it cannot be denied that the experiments which resulted in the invention in suit began soon after the first patent was applied for and continued almost without interruption until the difficulties were solved. The testimony of the complainants should not be wholly rejected because the court is unable to give it the weight to which the complainants think it entitled. The court may hesitate to find that Glankler had perfected his invention in October, 1888, and yet may be convinced that it was perfected before May, 1889. The testimony may be unreliable as to some details, but it is hardly possible, after reading it, to believe that a ring having an inclined bearing-surface and a stop-rim was unknown to the employés of the Chickasaw Cooperage Company in the latter part of 1888 and the early part of 1889. Unless the defendants are able to show that the patented device was used by others prior to the early part of 1889 it will be the duty of the court to overrule the defense as not having been established beyond a reasonable doubt. There is plausibility in the argument that the Glader machine was not perfected and used successfully until after the patented machine had been exhibited in Chicago and been seen by Glader and his employer in October, 1889. The earliest dates given by the defendants are April, May and June, 1889, but there is nothing definite or convincing about this testimony. Glader never conceived the idea which Glankler embodied. The Glader rings may have been worn by the heavy work put upon them into something resembling the Glankler device, but that Glader appreciated the significance of the grooves thus produced until after he had become familiar with the machine of the patent is entirely problematical. To state, with anything approaching accuracy, when the Glader ring became the Glankler ring is simply impossible.

To sum up the situation on this branch of the case, it is thought that the weight of evidence proves that the Glankler machine was first in existence. Surely no one can say with any degree of certainty that the Glader machine was first. Let it be assumed that the testimony is so uncertain, conflicting and unreliable that it is impossible to say which of the rival devices first saw the light, the court would still be constrained to overrule the defense. The defendants are entitled to no more favorable view of the evidence than this, and even this will not avail them. Unless the court is convinced by clear and indubitable proof that Glader preceded Glankler, and is prepared to make a positive finding of fact to that effect, the patent must be upheld. It is thought that such a finding is

simply out of the question. It would seem that the tribunal reaching such a conclusion must be perplexed with the doubt that after all it might be untrue—that perhaps a valuable patent was being stricken down upon mere speculation and guesswork. To relieve the court of such grave responsibility the rule before referred to was established.

The foregoing applies with equal, if not greater, force to the alleged Cincinnati use. That grooved plates were used at the Cincinnati factory in 1885 is not disputed, but it is denied that they were used to drive chine hoops, or that they embodied directly or indirectly the Glankler invention. Two witnesses on behalf of the defendants testify to a use of these plates, which, if true, would amount to an anticipation of the patent. On the other hand the complainants have called eight witnesses, apparently as intelligent and disinterested as those of the defendants, who flatly contradict this testimony and prove a number of facts which, to say the least, render the anticipating use highly improbable. For instance, it is undisputed that during all the time in question chine mauls were used at the Cincinnati factory. This fact alone is sufficient to raise the necessary doubt. If this highly practical invention, which, in other factories, drove out the hand process the moment it appeared, had been known in 1885 in a large establishment like that of the Cincinnati Cooperage Company, it is hardly possible that they would have continued for three years to use the primitive, clumsy and expensive chine maul in any of their departments. To find with the defendants upon this issue would be to convict the Cincinnati people of unparalleled stupidity. Business men do not act in this way. When the alternative between two methods, the one speedy, uniform and cheap, the other slow and expensive, is offered them, it is safe to assume that they will choose the former. The Cincinnati defense fades away in the light of common sense.

It appears, then, that Glankler was the first person who ever drove successfully a chine hoop by machinery. He was the first who ever used for this purpose a ring having an inclined bearing-surface and a stop-rim. He is entitled, therefore, to liberal treatment.

The claims are aptly drawn to cover the features referred to. It may be that there are more claims than are necessary, the first and second, for instance, being, substantially, for the same subject-matter; and yet there are shades of difference which in some subsequent litigation may become important. There is no necessity here for a strict verbal analysis of these claims, no necessity for holding any of them void because the invention might have been covered by three claims instead of four.

The defendants' machines are made in substantial compliance with the provisions of letters patent No. 454,803, granted June 23, 1891, to Leonard D. Morrison. Instead of using an annular platen they use segments of a ring as suggested in the Glankler patent, but when these are assembled and in use the ring is almost continuous. "This series of segmental platens each has the inner edge arranged to strike the chine of the barrel before the hoop is fully

driven on," and each is provided with a bearing-surface so inclined as to prevent the top edge of the hoop from curling inwardly. The bottom platen has these features and is not segmental. In other words, the defendants do precisely what Glankler did; but Glankler did it before the defendants or any one else. Their machine may be an improvement, they may have introduced some novelties, but that they have appropriated the principal features of the invention —the inclined bearing-surface and the stop-rim—there can be no doubt. Many minor differences can be pointed out, but a discussion of them is unimportant in view of the construction to which the complainants are entitled. The fact cannot be denied that the defendants have seized upon the salient operative features of the patented device. Glankler was the first to hit upon mechanism for driving the chine hoop of a barrel which supplanted the primitive hand method. The defendants have appropriated his ideas and seek to accomplish the same results by analogous means. The features which make their machine successful are Glankler's and not theirs. The patent law would offer but slight protection to an inventor if an infringer can escape the consequences of his acts by making the unsubstantial changes which these defendants have made.

The complainants are entitled to the usual decree.