ROBBINS et al. v. DUEBER WATCH-CASE MANUF'G CO. et al.

(Circuit Court, N. D. Ohio, E. D. December 2, 1895.)

No. 4,935.

1. PATENTS—WATCH CASES—VALIDITY—INFRINGEMENT.
   The patent of Caleb K. Colby, dated October 23, 1883 (No. 287,001), for improvement in watch pendant, *held* valid, and its first claim infringed by the watch cases manufactured and sold by the Dueber Watch-Case Manufacturing Company.

2. SAME—GENERAL USE.
   Extensive recognition by the public, large sales, and the fact that manufacturers have generally taken license under the patent, are potential facts, largely influencing the judgment of the court.

3. SAME—IMPROVEMENT UPON PATENTED DEVICE.
   A device is none the less an infringement because it contains an improvement upon the patented invention.

4. SAME.
   Winans v. Denmead, 15 How. 343, cited, approved, and followed.

This was a suit in equity by Royal E. Robbins and Thomas M. Avery against the Dueber Watch-Case Manufacturing Company, John C. Dueber, its president, and Winthrop A. Moore, its secretary and treasurer, for alleged infringement of a patent.

Prindle & Russell and Lysander Hill, for complainants.
Chas. R. Miller and M. D. Leggett, for defendants.

RICKS, District Judge. This is a suit for an injunction restraining the defendants from infringing a patent issued to Caleb K. Colby on the 23d of October, 1883 (being patent No. 287,001), for an improvement in watch pendants. The prayer of the bill

is also for an account of profits, and damages for the defendants' infringement, from February 13, 1891, to the present time. The defense is—First, that the patent is invalid; second, that the claim is not infringed. The defendants seem to rely entirely upon the prior patents to sustain the defense of invalidity, and in support of the defense of noninfringement they show the state of the art before Colby's invention, claiming that Colby's claim was limited by proceeding in the patent office, and relying further upon certain differences in construction between the Colby device and the defendant's watch case. Only the first claim is involved in this issue. That claim reads as follows:

"First, the combination in a stem-winding watch of the tubular stem; a key mounted to rotate in said stem, and to project into the movement and engage the winding arbor, as shown; a spring attached to one of these parts, and arranged to engage the other part to form a latch device, as shown; and the said winding arbor,—all arranged substantially as and for the purposes set forth."

The evidence sustains the averments of the bill as to the title of complainants to the patent, and no controversy exists on this point. The defendants at one time acted under a license from the complainants, dated July 9, 1885, which license was revoked February 13, 1891, by the complainants, alleging as a cause that the licensees had failed to make certain reports within the time provided for by the terms of the license. The invention is very simply and tersely stated by Mr. Dayton, an expert witness for the complainants, in the following language:

"The invention relates to the class of watches known as 'stem-winding watches,' or, in other words, to watches in which a key or stem arbor passes through the hollow stem of the case into engagement with the winding arbor of the watch movement, so that by the rotation of the key the watch may be wound. By a longitudinal movement of said key within the stem, the key may be retracted from engagement with the winding arbor of the movement, either completely, or sufficiently to allow the movement to be easily lifted out of the case or inserted therein. The nature of the invention consists in providing a spring latch within the case stem, by which the key and stem may be latched to each other in such manner that the key will be yieldingly held by such latch in its inner position; the latch, however, allowing the key to be retracted, as above stated. As the patent states the invention, after describing the numerous forms which may be given it, 'the essential feature of all is the elastic or spring-latch attachment of the stem, B, with the key, C, whereby the latter is free to rotate, but is prevented from being moved longitudinally except by a special effort.' "

The state of the art showed that steady progress had been made in the construction of both watch movements and watch cases, from the earliest and first form of the watch, which was the old-fashioned one, in which a pocket key was used to adjust the setting movement and to wind the watch. Then came the old pendant-set watch, then the lever-set watch, and then the modern Church pendant-set watch. At the time of the Colby invention, the lever-set watch was the favorite one in the market. The lever-set watches had their faults. Not only was the lever independent from the tubular stem, but it was so connected with the movement of the watch that it prevented the latter from being taken out of the

case without the use of some mechanical devices. The Colby invention not only provided for putting into effect the winding engagement without any independent appliance, but also, by a little independent physical effort, retracted the rotary key or arbor from the winding engagement, and put it into relation with the setting movement. While the rotary key was in this position, the works were capable of being removed from the case without taking to pieces any portion of the movement or case. In the old pendant-set watch, in use before the Colby invention, the stem arbor consisted of one solid piece, extending from the thumb piece at the outer edge of the stem into the interior of the movement. It there connected with a shifting device, which put it into connection with the winding engagement by pressing the shift inward, and into the setting engagement by pulling it out. But the objection to this device was that the movement could not be taken out of the case without taking to pieces some portion of it, or some portion of the case. Since Colby's invention, the modern Church pendant-set watch came into use, which is so constructed that the movement goes automatically into the setting engagement whenever the stem arbor in the Colby case is pulled out. This dispensed with any shiftable element in the movement, and made it possible to avoid the long stem arbor, by using a short one, so that the movement could be readily lifted out of the case, as before stated. The Colby invention seems to have suggested the Church invention in pendant-set watches, for the two together have practically revolutionized the art, and superseded all other cases and movements. The great step in the Colby invention, in my judgment, was that it dispensed with the use of all locks, pins, set screws, and other means that had been used in prior patents to make it possible to have the stem arbor so short that the works could easily be removed from the case. All these locks, devices, and pins, while seeming to be improvements, did not meet the public expectation. The whole device, in the Colby invention, for securing the stem arbor in secure position, was placed within the stem. It was a neat, cheap, and effective device. By means of lateral spring pressure, this stem arbor was held in position within the stem so as to both rotate and submit to be either pushed or pulled into the position necessary to do its work. This device related to the case. The improvement claimed is wholly within the stem and the case. This invention, therefore, relates to pendants and watch cases. A watch case is a separate article of manufacture from the watch movement. Colby was evidently endeavoring to perfect the watch case by making one which would, without reference to the form or construction of the movement, furnish a desirable and ingenious case. To look for an anticipation, therefore, we must look to inventions in relation to watch cases. Mr. Knight, the defendants' expert, divides the patents relied upon by the defense into four groups, as representing four different classes of devices. The first group embraces some 13 patents, and Mr. Knight says they—

"All, or nearly all, refer to winding keys in the stem, which are moved longitudinally for the purpose of shifting the connections from the winding to the hand-setting position, or vice versa."

He claimed they showed the particular improvements pointed out in claim 1 of the Colby patent. To this general statement, Mr. Dayton, the complainants' expert, dissents, for the following reason, which seems to me very satisfactory and persuasive:

"The principal and sufficient reason for such dissent is that not a single one of the foregoing list of patents has a spring-latch device within the stem for engaging the stem with the longitudinal, movable stem arbor or key, either as shown in the Colby patent, or in any other way, form, or arrangement whatever. Some of them have even no latch device of any kind anywhere, but such of them as have latch devices for holding the stem arbor or key at either extreme of its movement have such latch devices in the movement, and not in the case, or in the stem of the case."

He then proceeds to explain each of the patents separately, to sustain this general proposition, and I think he is well supported in his conclusion by his reference to the patents.

The second group of patents mentioned by Mr. Knight comprises the two Fitch patents, the Brez, Lange, Smith and Folsom, and Hilleek patents. Of these patents, Mr. Knight says they—

"Disclose the combination in a stem-winding watch of a tubular stem and a key mounted to rotate in said stem, and having longitudinal movements therein for the purpose stated in the Colby patent, namely, to facilitate the release or the removement of the movement from the case, or show special provision to facilitate the detachment or separation of the key in the stem and winding arbor in the movement, so that the movement may be readily taken out."

But it is to be noticed that Mr. Knight does not pretend that he finds in either of these patents a spring latch, or any kind of a latch connecting the stem to the stem arbor or key; and Mr. Dayton insists that it is a fact that neither of said patents shows such a device, or any device for that purpose. Inasmuch as this is one of the chief elements of the Colby device, it follows, I think, as Mr. Dayton well reasons, that neither of these prior patents contains the improvements of the Colby patent.

The third group of patents mentioned by Mr. Knight—

"Illustrate devices designed to facilitate the insertion and removement of the movement in and from the case without necessarily providing for the separation at precisely the same point described in complainants' patent; that is, between the stem key proper and the arbor or pinion of the movement with which it operates."

In this class he recites and includes the Eisen, Blauer, and Gontard patents. Mr. Dayton examines each of these patents, and, I think, clearly shows that they have no bearing on the Colby invention. In the Eisen patent it is necessary, in order to take the movement out of the watch case, that it should be taken apart. The movable stem-arbor key in the Blauer patent is not connected with the stem by a spring latch, or by any other sort of a latch. In the Gontard patent no longitudinal movement is shown with reference to the stem arbor, whatever.

The fourth and last group of patents cited by Mr. Knight comprises the Fisher and Lucas, Humbert, Dueber (1876), Bourgeois

and Jacky, Hamann, Dueber (1875), and Jacot patents. Mr. Dayton says that neither of these patents shows a watch of even the class to which the Colby patent relates; that neither watch in the above lists of defendants' patent exhibits shows a stem-winding watch—

"On the contrary, every one of them refers to the old-fashioned style of watch, in which a separate key, that might be carried in the vest pocket, was inserted through a hole in the back cap of the watch case to engage the main-spring arbor. The key had to be applied to the main-spring arbor by hand, as well as to be turned by hand; and after the watch was wound the key was removed by hand, and put into the vest pocket, and there carried until the watch again required winding. * * * In each one of said prior patents it was proposed to pocket this winding and setting key temporarily and removably within the stem of the watch case, instead of in the vest pocket of one's clothes, and this was a useful expedient."

. Mr. Dayton then explains the patents further at length, and finds five structural differences between these old devices and the Colby invention in suit. To these five structural differences, he adds—

"That the key of the old devices referred to, not being used to rotate and wind the watch while pocketed in the case stem, does not protrude into the case beyond the inner surface of the case rim, and is not then engaged with the watch movement; and this difference involves the vital difference to which I first alluded, viz. that said old device does not belong to the class of stem-winding watches at all, to which the Colby invention exclusively belongs."

I have read Mr. Dayton's deposition with a great deal of care, and think he has demonstrated, so far as these four groups of patents are concerned, that they did not anticipate the Colby invention. I think that the Colby device involved invention, and that his patent is valid. I reach this conclusion, not only because Mr. Dayton seems to have made it very clear in his deposition, but from certain other facts which stand out, and must always have great influence with courts in passing upon such patents. In the first place, the defendant was for a long time a licensee of the complainants. It thereby, at the time the license was taken, clearly recognized the validity and value of the complainants' patent and invention. This license was not voluntarily relinquished, but was revoked because of the defendant's failure to comply with its conditions; so that it cannot be said that it gave up its license under this patent because it was satisfied it was of no further value. I do not refer to this fact as in any way impairing the defendant's right to set up the defense relied upon in its answer, but as indicating what the judgment of its officers and advisers was as to the value of this invention during the time it was a licensee. Another potent fact is the very general recognition of the value of this invention when it was first made public. The proof shows that over 1,000,000 cases were made and sold per annum. Still another important fact is that all other large manufacturers of cases, except the defendants, are licensees of the complainants. These, I say, have been potential facts, and have largely influenced me in reaching the conclusion that the complainants' patent is valid.

Does the defendant infringe? The question of infringement

seems very plain. The defendant's expert seems to rely largely upon the assumption of the prior art, and that amendments made in the patent office so far restricted complainants' first claim that the key of any infringing device must be retractable entirely out of the movement, so as to permit the latter to be vertically taken out of the case, and that the latch spring must be fastened to the key or to the stem by exactly the form of attaching device, namely, rivets or clamps, or whatever is variously shown in the patent. He further acts upon the assumption that the defendant's latch spring is not attached either to the stem or to the key. I have examined the file wrapper and contents of the patent, and do not think that a fair construction of it limits the complainants' claim as counsel for the defendant contend. It seems clear to me that in the defendant's watch the latch-spring is attached to the stem. Mr. Knight claims that the rotatability of this spring is an advantage; but, as Mr. Dayton well says, this does not change the fact that the latch spring is attached to the stem. He insists that it is rotatably attached to the stem. He further insists that this attaching device in the defendant's case—

"Does exactly what the attaching device does in the Colby patent, namely, holds the spring from movement endwise of the stem, so that it, in turn, may hold the key from longitudinal movement. The fact that the defendant has introduced a new advantage or utility, so long as he retains the essential construction and the mode of operation, and retains all the results and advantages aimed at in the patent, and does this by the same means, it does not, in my understanding, lessen the subjection of his device to the claim."

Mr. Dayton, in his first deposition, in giving it as his opinion that "complainants' exhibit defendant's watch case clearly contains the invention set forth in the Colby patent," exhibited a drawing or sketch of the defendant's watch case, which, it seems to me, with his explanation, clearly shows an infringement, and makes it clear to me that the defendant's watch case falls exactly and clearly within the statement of the Colby patent, that:

"The essential features of all is the elastic or spring-latch attachment of the stem, B, with the key, C, whereby the latter is free to rotate, but is prevented from being moved longitudinally, except by a special effort."

In the case of Winans v. Denmead, 15 How. 343, the supreme court said:

"Where form and substance are inseparable, it is enough to look at form only. When they are separable; where the whole substance of the invention may be copied, in a different form,—it is the duty of courts and juries to look through the form for the substance of the invention,—for that which entitled the inventor to his patent, and which the patent was designed to secure. Where that is found, it is an infringement; and it is not a defense that it is embodied in forms not described, and in terms not claimed, by the patentee."

I think this rule applicable to this case,—that the defendant's device embodies that which entitled the inventor to his patent, and which the patent was designed to secure,—and it is therefore an infringement. There may be a decree for the complainants, and the usual reference.