AMERICAN DELINTER CO. v. AMERICAN MACHINERY & CONSTRUCTION CO.*

(Circuit Court of Appeals, Fifth Circuit. February 23, 1904.)

No. 1,309.

1. PATENTS—SUFFICIENCY OF DESCRIPTION.

It is not essential to the validity of a patent to insert in the drawings and specification a description of every detail. It is sufficient if the description is such as to enable a mechanic skilled in the art to construct the device patented.

2. SAME—FAILURE TO SPECIFY MINOR PART.

A patent for a machine for delinting cotton seed, which shows that the seed is to be fed into the machine at one end and discharged at the other, is not invalidated by the failure to specify or show in the drawings a feed screw or other device for assisting to move the seed through the machine; the machine being operative without it, but it being obvious that some such device would aid the passage of the seed through the machine, and when in fact it was used in the construction of the first machine.

3. SAME—INFRINGEMENT—COTTON SEED DELINTER.

The Thomas patent, No. 503,103, for a machine for delinting cotton seed, was not anticipated, and, although the parts were old, shows a com-

---

* Rehearing denied April 5, 1904.

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 133, 135.

bination producing a machine of novelty and greater utility than any previous machine in the art. Claims 5 to 9 also *held* infringed by the Baxter delinter, made in accordance with patent No. 659,840.

Appeal from the Circuit Court of the United States for the Southern District of Mississippi.

The following are the drawings and specifications of the Thomas delinter, which are referred to in the opinion:

METHOD OF AND APPARATUS FOR DELINTING COTTON SEED.
No. 503,103.                    Patented Aug. 8, 1893.

Fig. 1.

Fig. 2.

Fig. 3.          Fig. 4.

"To All Whom it may Concern:

"Be it known that I, Abner D. Thomas, of Little Rock, Arkansas, have made a new and useful improvement in methods of and apparatus for delinting cotton seed, of which the following is a full, clear, and exact description.

"In carrying out the improvement the lint-bearing seed is fed into a receptacle containing a lint-cutting or seed-abrading part which, in its general outline,

is cylindrical or approximately cylindrical, and which is arranged horizontally and adapted to be rotated in a vertical, or approximately vertical, plane. The shell or casing which forms the wall of the seed-receptacle is not in itself intended to serve as a lint-cutting or seed-abrading part, but to form a support for the material while it is being acted upon by the rotating part, and it is shaped and arranged, and is of suitable size, to inclose an annular, or approximately annular, space around the rotating part so that the material being treated can assume an annular, or approximately annular, form around the described rotating part, and, opposite the surface of the rotating part, it is perforated to provide an outlet for the lint which is separated from the seed. There is a separate outlet for the denuded seed. The perforations in the shell or casing are large enough, and are suitably formed, to enable the lint to escape through them, but not so large that the denuded seed can pass through them. It is not essential that the perforations, as a system, extend entirely around the circumference of the shell or casing, but it is desirable for them to so extend as thereby an outlet for the lint is obtained in all directions around the body of seed being treated. An escape flue for the lint connects with the outer side of the perforated portion of the casing through which the lint discharged through the casing is carried off. The denuded seed is worked endwise within the described annular space and is discharged through the separate outlet mentioned. This outlet is usually at the end of the seed-receptacle, and it may be of any suitable form for the purpose in question, and lead to any desired quarter. In constructing the perforations which form the lint-outlet care should be taken to avoid projections, roughnesses, or anything calculated either to interfere with the movement (hereinafter referred to) of the annular body of seed, or with the escape of the lint. The rotating part is the means relied upon for separating the lint from the seed, and to further that end it is not only itself adapted to be rotated but it is also so shaped or contrived as to cause its motion to be communicated to the surrounding body of seed to cause it in turn to rotate or move within the annular space, so that all portions of it are presented to the surface or surfaces of the rotating part and all the different lint-bearing seeds substantially brought directly into contact with the rotating part, to be uniformly and thoroughly treated. That is, the lint-bearing seed, as a body, is carried around in the annular space, but at a slower rate than that at which the rotating part is revolved—say about one half as fast—and the seed in consequence, is abraded by the rotating part, and at the same time in all parts of the rotating body of seed the seed is stirred and tumbled about and overturned and thereby uniformly treated, and an additional feature of the improved method consists in advancing the seed-roll endwise through the seed receptacle and thereby carrying the seed repeatedly around the rotating part, and subjecting the seed again and again to the abrading, cutting, or tearing action of the rotating part until the seed becomes substantially stripped of its lint, and the lint and denuded seed discharged separately, all as is hereinafter set forth and claimed, aided by the annexed drawings making part of this specification, in which—

"Figure 1 is a plan of the improved delinter, portions of the inner and outer casings which inclose the rotating part, and also a portion of the casing of the air-moving apparatus, being broken away to exhibit the interior; Fig. 2 a side, sectional, elevation of the delinter; Fig. 3 a front end elevation of the delinter; Fig. 4 a vertical transverse section on the line 4—4 of Fig. 2; Fig. 5 a side elevation of the rotating part which effects the separation of the lint from the seed; Fig. 6 a cross section on the line 6—6 of Fig. 5; Fig. 7 a cross section on the line 7—7 of Fig. 5; Fig. 8 a cross section on the line 8—8 of Fig. 5; Fig. 9 a side elevation of the rotating part in a simpler form.

"The same letters of reference denote the same parts in all the figures.

"A represents the rotating part.

"B represents the perforated casing which incloses the annular space, b, around the rotating part.

"C represents an outer casing which incloses a flue, D, which surrounds the casing, B. This flue leads to an air-moving apparatus, E, and preferably in the form of the two branch flues, d, d', which lead, respectively, from the end

portions of the flue, D, or casing, B, and which respectively connect with the two chambers, e, e', of the air-moving device. For while a single escape flue and air-moving device will answer to move the lint from the chamber, D, I prefer, for a reason presently mentioned, to employ the two separate escape flues and to make the air-moving device a double one, as thereby the lint can be graded and the different grades separately discharged from the delinter. To accomplish this the air moving device is in the form of a pair of fans, $c^2$, $c^3$, attached to the same shaft, $e^4$, but rotating in the separate chambers, e, e', respectively, and separate outlets, $e^5$, $e^6$, lead from the chambers, e, e', respectively, substantially as shown. The rotating part, A, is attached to a suitable shaft, F, and by means of a pulley, G, thereon, power can be transmitted to effect the revolution of the part, A, at as rapid a rate as may be desired, and by means of the belt, H, leading from another pulley, h, upon the shaft, F, to a pulley, h', upon the shaft, $e^4$, the rotation of the fan is accomplished.

"I represents a suitable inlet through which the lint-bearing seed is introduced into the seed-receptacle, b, and J represents a suitable outlet for the seed after the lint has been separated therefrom.

"A suitable frame work, K, sustains the described parts of the delinter.

"The part, A, so far as the general object of the improved delinter is concerned, may be constructed of any suitable material, materials, part or assemblage of parts, and in any suitable shape so long as it, as a whole, is calculated to both move and carry around the body of lint-bearing seed, and to cut, abrade or otherwise separate the lint from the seed, and as one desirable form thereof, the part, A, is composed in portions, if not largely or wholly, of corundum, and in the particular shape shown substantially in Figs. 5 to 8, and as follows: As a whole the part may be considered cylindrical, but beginning at that end of it which is opposite or next to the inlet to the seed-receptacle and proceeding to or toward the opposite end of the part, the surface of the cylinder is in the form of a series of channels or grooves which encircle the cylinder, and which at various intervals are separated by portions which are serrated, pointed, or shouldered, or otherwise shaped, to catch hold of, stir, lift, and drag around the surrounding body of lint-bearing seed in the manner described.

"In the present illustrations, a, a', $a^2$, $a^3$, $a^4$, $a^5$, $a^6$, $a^7$, $a^8$, represent the grooves, and $a^9$, $a^9$, $a^9$, $a^9$, represent the pointed or shouldered portions, and $a^{10}$, $a^{10}$, $a^{10}$, $a^{10}$, represent circular, disk-like portions, which are used more especially in conjunction with the channels or grooves $a^5$, $a^6$, $a^7$, $a^8$, and which, when used are at that end of the cylinder which is toward the denuded-seed outlet, substantially as shown. The channeled or grooved portions serve more especially to cut, abrade, and separate the lint from the seed. The portions, $a^9$, $a^9$, serve as stated to move, lift, and drag the seed. The channeled or grooved portions, $a^5$, $a^6$, $a^7$, $a^8$, are considerably deeper than are the other channeled or grooved portions and they serve, in conjunction with the circular portions $a^{10}$, to provide an extended abrading surface past which the nearly-denuded seed is, in the operation of the parts, moved and thereby substantially completely stripped of its lint. They serve therefore to finish the treatment of the seed and I consider them desirable, although the improvement can be largely, if not entirely, carried out by means of a cylinder which does not have them, but which may be constructed substantially as shown in Fig. 9. The channeled or grooved portions, a, a', etc., preferably have the waved contour shown, and said portions, beginning at the inlet end of the cylinder, successively preferably increase in width substantially as shown, and the shouldered portions are successively arranged farther and farther apart. The points, projections or shoulders, $a^{11}$, of the portions, $a^9$, project in practice, radially beyond the adjoining channeled or grooved surfaces, substantially as shown. The entire cylinder, A, may be composed of a series of separate parts, a, a', etc., $a^9$, $a^{10}$, assembled and united upon the shaft, F, and connected therewith, to be rotated as a single part. As the portions, $a^9$, serve rather to agitate and drag the seed it is not so essential that they be composed of abrading material or be adapted to cut or abrade the lint. But the capacity of the cylinder, A, as a lint-separating device, is increased by adapting the portions, $a^9$, to serve also as a lint-separating means.

"In operation, the lint-bearing seed is introduced into the seed-receptacle and the abrading cylinder, A, is set in motion. The seed works its way throughout the receptacle and assumes the described annular form around the cylinder. The cylinder acts upon the seed immediately adjacent to it and the separation of the lint from the seed is initiated. At the same time, owing to the described projections upon the cylinder, the body of seed as a whole is caused to rotate within the receptacle and to follow the cylinder in its movement. The cylinder, in respect to that feature of it which enables its motion to be imparted to the body of seed or seed-roll as it may be termed, is provided with projections which while they engage the interior of the roll allow the roll to slip, or travel around at a slower rate than the cylinder, for the reason that they do not take a complete and positive hold of the roll, and also to some extent by reason of the contact of the exterior of the roll against the perforated casing. The preferred distance from the extremities of the projecting portions of the cylinder to the surrounding casing is about seven eighths of an inch. The seed as a body not only travels around within the casing, and by reason of its slower rate of movement is acted upon by the cylinder, but is also in all parts of it stirred and turned to cause the seed throughout the thickness of the roll to be presented to the action of the cylinder. And further, and owing to the horizontal arrangement of the cylinder, the seed, which is by the action of the cylinder lifted or carried into the upper portion of the seed-receptacle, is in position to drop, and by reason of its gravity it does drop onto the cylinder and the seed in consequence is further subjected to the abrading action of the cylinder and in consequence is more thoroughly treated. In thus presenting the lint-bearing seed to the cylinder care must be taken not to crowd it against the surface of the cylinder, as in such case the cylinder is liable not only to remove the lint but also to cut the hulls of the seed something which is quite undesirable, for the value of the entire process depends largely upon separating the lint without any admixture of any part of the seed. For this reason it is necessary for the lint-bearing seed to be presented gently to the cylinder and this is accomplished by having a sufficient thickness of seed-body, substantially as described, around the cylinder as thereby a yielding support is constantly provided for those of the seeds which are for the time being immediately in contact with the cylinder. The roll as stated is preferably introduced into the seed receptacle at one end thereof, and it, as a body, is not only caused to rotate in the manner described but it is also advanced toward the opposite end of the seed receptacle, and in this way the seed is repeatedly subjected to the action of the cylinder and thereby given ample opportunity for becoming stripped of its lint. The separated lint is continually being exhausted through the outlets in the casing and the seed escapes through its own outlet at the end of the seed receptacle. The operation is a continuous one as long as the machine is in operation and the lint bearing seed supplied thereto. Air is admitted into the flue, D, preferably through the opening, $c^5$, in the casing, C, and the opening can be graduated by means of the slide, $c^{10}$. The inlet, I, is not shown in Fig. 3.

"I claim—

"(1) The herein described method of separating lint from seed which consists in forming the lint-bearing seed into an annular roll and then subjecting such roll internally to a rubbing or cutting action whereby the lint is separated from the seed.

"(2) The herein described method of separating lint from seed which consists in forming the lint-bearing seed into an annular roll, revolving the same on its axis, and, while so moving, subjecting it internally to a rubbing or cutting action, whereby the lint is separated from the seed.

"(3) The herein described method of separating lint from seed which consists in forming the lint-bearing seed into an annular roll, revolving the same on its axis, and while so moving, subjecting it internally to a rubbing or cutting action, whereby the lint is separated from the seed, and discharging the separated lint at the external surface of the roll.

"(4) The herein described method of separating lint from seed which consists in forming the lint-bearing seed into an annular roll, revolving the same on its axis; and at the same time stirring the roll, and while so moving it, subjecting the roll internally to a rubbing or cutting action, whereby the lint

is separated from the seed, and discharging the separated lint at the external surface of the roll.

"(5) In a seed-delinter, the combination of a horizontally-arranged, rotating cylinder and an outer casing, said casing being perforated to provide an outlet for the separated lint and seed, and said cylinder having channeled and shouldered portions to effect the movement of the seed in the form of a roll and the separation of the lint therefrom, substantially as described.

"(6) In a seed-delinter, the combination of a horizontally-arranged rotating cylinder and an outer-casing, said casing being constructed and arranged to provide for the formation of an annular roll of lint-bearing seed around said cylinder, and being perforated to provide an outlet for the separated lint and seed, and said cylinder having projecting portions to effect the rotation of said roll as described and having cutting or abrading surfaces to effect the separation of the lint from the seed.

"(7) In a seed-delinter the combination of a horizontally-arranged, rotating cylinder, an annular lint-bearing seed receptacle surrounding said cylinder, a lint-discharge flue without said seed receptacle and an air moving apparatus, said receptacle having an inlet for the lint-bearing seed and an outlet for the denuded seed, and its casing being perforated to provide an outlet for the separated lint, and said cylinder having projecting portions to effect the rotating of said roll as described and having cutting or abrading surfaces to effect the separation of the lint from the seed, substantially as described.

"(8) In a seed-delinter a horizontally arranged cylinder in combination with a surrounding annular, seed receptacle, said cylinder having channeled surfaces for effecting the separation of the lint from the seed and having pointed or shouldered portions for effecting the rotation of the lint-bearing seed around said cylinder, said channeled portions being deeper at the seed-delivery end of the cylinder.

"Witness my hand this 4th day of February, 1893.

"Abner D. Thomas.

"Witnesses:
"H. H. Schmuck.
"A. II. Thomas."

The following are the drawings and specifications of the Baxter patent, referred to in the opinion:

No. 659,649.

W. C. BAXTER.
COTTON SEED DELINTER.
(Application filed Dec. 8, 1896.)

Patented Oct. 16, 1900.

Fig. 1

"To All Whom it may Concern:

"Be it known that I, William C. Baxter, of East Bridgewater, in the county of Plymouth and state of Massachusetts, have invented a new and useful improvement in cotton-seed delinters, of which the following, taken in connection with the accompanying drawings, is a specification.

"My invention relates to improvements in machines for removing the lint from cotton-seed; and it consists in devices by which a much better feeding.

Fig. 2.

Fig. 7.

Fig. 8.

Fig. 6.

Fig. 3.

Fig. 4.

Fig. 5.

action is attained, the practical working of the machine is improved, and there is no danger of the running parts becoming clogged.

"My invention is illustrated in the accompanying drawings, in which—

"Figure 1 shows the machine partly in elevation and partly in vertical section. Fig. 2 is a plan showing the essential features of my machine, a part being represented as broken out to show the interior construction. Fig. 3 is a vertical section taken on line, X X, Fig. 1, enlarged. Fig. 4 shows in end elevation the cylindrical part of my machine; Figs. 5, 6, 7, and 8, details.

"The framework of my machine is represented by A, A′, A². The main shaft, B, is mounted on bearings, A², A² (see Fig. 1), and is driven by the belt-

pulleys, B', B'. A sleeve or hollow shaft, B2, is mounted upon the shaft, B, and is rigidly affixed to it. At each end of the sleeve, B2, a disk is attached, one, M2, of these disks permanently fixed to the sleeve, but the other, M, is screwed on, as shown in Fig. 1.

"C, C, are a series of abrading or grinding wheels mounted upon the sleeve, B2. These wheels, C, C, are made of corundum wholly or in part and are more or less grooved circumferentially, as shown. Between each pair of the wheels, C, C, I place a metallic disk, D, each of which has teeth or projections, D', D'. These teeth are arranged spirally, as shown in Fig. 2, so that as they rotate they have a tendency to feed the cotton-seed along, as well as to act as stirrers and also to assist in removing the lint from the seed.

"The teeth, or, as I prefer to call them, 'stirrers,' D', D', are made in a peculiar form to adapt them to their work. This form is clearly shown in Figs. 7 and 8. In Fig. 7 a stirrer is shown in plan and in Fig. 8 in front elevation. The front face, d, e, e', d', is inclined, as indicated, so as to have a tendency to cause the seed to advance along the cylinder from the feed end to the discharge end. The side face (indicated by the line, d, d2) is also inclined, so as to force the seed in the same direction. The top face, d', e', e2, d2, is also inclined, as indicated by the line, e', d', Fig. 8, for the same purpose. The front face of the stirrer, being inclined, as shown, serves as it travels through the seed to force the seed primarily against the corundum rolls, from which it is forced outward against the inner surface of the perforated cylinder, so that the lint is rubbed or ground from it, and the position of each seed is constantly changed throughout the mass. At the same time the seed is packed in the mass with sufficient pressure to be so held against the grinding-roll that the lint will be ground away.

"From the above it may be seen that the stirrers act to prevent the machine from clogging, to assist in the delinting operation, and to advance the seed from the feed end to the discharge end of the machine.

"It will be, observed that the corundum wheels, C, C, and the disk, D, D, constitute a delinting-drum mounted upon the shaft, B, which is driven with great force and rapidity by the belt-pulleys, B', B'.

"A perforated cylinder, K, surrounds the working or delinting drum. This cylinder, K, is made conical, being smaller at the left-hand end than at the right—that is, it is larger at the end which receives the seed to be delinted (from the chute, S) than at the end from which the denuded seed is delivered to the outlet, P. This construction allows of a larger space between the drum and the interior of the perforated cylinder at the feed end than at the delivering end, which is highly desirable, especially in connection with the suction, as the seed when entering are covered with lint and require more space than when the lint has been taken off from them and they are about to pass out of the machine through the outlet. P. This same result could be attained by making the diameter of the delinting-drum larger at the discharge end than it is at the feed end and by making the perforated cylinder, K, of the same diameter at each end. The perforations in the cylinder, K, are larger at the feed end than at the discharge end, for the reason that the lint is longer and requires larger orifices for escape than is required at or near the discharge end, when the seed-covering is of a much finer nature.

"To assist in feeding, I have a worm, S', attached to the shaft, B, at the discharge end of the chute, S, so that as the seed covered with lint fall from the chute they are fed into the space between the delinting-drum and the cylinder, K. As the process of delinting goes on the lint works out through the openings in the cylinder, K, and is carried off by a suction applied at N3. In practice a hood or receiving-chamber is mounted at N3 to receive the lint that is removed from the seed, the seed passing out through the chute, P. For convenience I place an adjustable door or valve, P', in the chute, P, which may be operated by the screw, P2. By adjusting the valve, P', the discharge of the denuded seed may be regulated—that is, the seed may be held back just enough to keep the space between the delinting-drum and the perforated cylinder well filled and in position to be acted upon.

"The end pieces, E and E2, are solidly attached to the framework by the bracket-pieces, E' and E3. (See Fig. 1.) The cylinder, K, and the casing, N, N', are firmly fixed to said end pieces, E and E2.

- '"To operate my machine, the seed covered' with lint is placed in the chute, · S, and falling upon the worm, S', is fed along into the space between the delinting-drum and the perforated cylinder, .K, and there acted upon, being carried around the said drum and gradually forced in a longitudinal direction toward the discharge-chute, P. As the seed is forced along it is subjected to the abrading action of the corundum wheels, C, C, and also to the action of the teeth or stirrers, D', D', on the disks, D, D.

"The end disks, M, M², Fig. 1, are provided with a series of recesses or pockets, M', M' (see Fig. 6), which are used for inserting lead for the purpose of balancing the delinting-drum.

"To prevent the accumulation of dust, etc., between the end disk, M, and the headpiece, E², I have an opening, H, in the headpiece. E², and a scraper, II'. This scraper, H', bears against the face of the end disk, M, and rubs off the dust, forcing it out through the opening, H.

"I claim—

"(1) In a delinter, a rotating drum and a perforated cylinder surrounding it, said drum and cylinder being shaped with relation to each other as shown and described, whereby a chamber is formed surrounding said drum tapering in size from the inlet to the outlet, in combination with means for creating suction about said chamber, and feed and delivery devices, substantially as set · forth.

"(2) In a delinter, a rotating drum, and a perforated cylinder surrounding it, the perforations in said cylinder being larger at the inlet than at the outlet, and said drum and cylinder being shaped with relation to each other as shown and described whereby a chamber is formed surrounding said drum and tapering in size from the inlet to the outlet, in combination with means for creating suction about said chamber, and feed and delivery devices, substantially as set forth.

"(3) In a delinter, a rotating drum and a perforated cylinder surrounding it, the parts being so proportioned that the seed-space between them decreases from the feed to the delivery end; combined with a chamber surrounding the cylinder, means for creating suction therein, and means for forcing the seed while in transit against said drum, substantially as and for the purpose set forth.

"(4) In a delinter, a horizontal rotating drum, and a perforated cylinder surrounding it and having its perforations decreasing in size from the feed toward the delivery end; combined with a chamber surrounding the cylinder, and means for creating a suction therein, substantially as and for the purpose set forth.

"(5) In a delinter, a rotating drum, and a cylinder surrounding the same and provided with perforations decreasing in size toward the delivery end, the parts being so proportioned that the seed-space between the drum and cylinder, also decreases in size from the feed end toward the delivery end; combined with a chamber surrounding the cylinder, and means for creating a suction therein, substantially as and for the purpose set forth.

"(6) In a delinter a rotating delinting-drum, a fixed perforated cylinder surrounding said drum, a headpiece as E² having a dust-opening as H provided with a scraper adapted to remove dust from the end of the delinting-drum, substantially as and for the purpose set forth.

"(7) In a delinter, a delinting-drum consisting of a series of corundum wheels and disks having teeth, said teeth having the form of irregular hexahedrons the working faces of which are inclined to the line of their motion whereby they act as stirrers, rubbers and feeders, substantially as and for the purpose set forth.

"(8) In a delinter, a horizontal, self-feeding, delinting-drum inclosed in a perforated cylinder; and a seed-escape passage arranged tangentially to the said perforated cylinder; and a regulating-valve swinging upon an axis parallel to the axis of the said cylinder, and having its free end adjustably held; and mechanism for adjusting the said valve, substantially as and for the purpose set forth.

"(9) In a delinter, a rotating delinting-roll, consisting of a series of grinding-wheels, and a series of stirrers, each stirrer having one or more teeth, one or more faces of each tooth being inclined with relation to the axis of the roll, as described, and a perforated cylinder surrounding said roll, said roll and said

cylinder being shaped with relation to each other, as shown, whereby a chamber is formed surrounding said roll and tapering in size from the inlet to the outlet, and the seed in process of delinting is forced during said process toward said outlet, in combination with feed and delivering devices, as set forth.

"In testimony whereof I have signed my name to this specification, in the presence of two subscribing witnesses, on this 2d day of December, A. D. 1898.

"William C. Baxter.

"Witnesses:
    "Frank G. Parker,
    "Frank G. Hattie."

Robert P. Hains, for appellant.

T. C. Catchings, for appellee.

Before McCORMICK and SHELBY, Circuit Judges, and PARLANGE, District Judge.

SHELBY, Circuit Judge. The bill beginning this suit was filed by the complainant (appellant here), an Arkansas corporation, against the defendant (appellee here), a Mississippi corporation. The complainant is the owner of patent No. 503,103, of date August 8, 1893, for a new and useful improvement in methods of and apparatus for delinting cotton seed, and known as the "Thomas Delinter." It alleged that the defendant had infringed the patent of the complainant by making, using, and leasing, and offering to lease, a machine known as the "Baxter Delinter," patented October 16, 1900, as shown by letters patent No. 659,840. The complainant prayed for damages for the alleged infringement and for a perpetual injunction. The defendant answered that the Thomas patent was not valid, and that it had been anticipated in whole or in part by 18 other patents named, and admitted the making and leasing of the Baxter delinter, but denied that in doing so it had infringed the rights of the complainant, and denied that the Baxter delinter was substantially the same as the Thomas delinter in purpose, construction, or operation.

The Circuit Court dismissed the bill, denying the complainant any relief, and an appeal was taken to this court. It is assigned, with proper specifications, that the Circuit Court erred in the decree dismissing the bill.

There are two questions to be decided: (1) Is the Thomas delinter patent valid? (2) Has the defendant infringed that patent?

1. It is matter of common knowledge that when cotton is passed through the gin, while the long lint is separated from the seed, there is left clinging to the seed a short lint. This short lint has some value when separated from the seed, and its separation adds to the commercial value of the seed. It has been evident for many years that a machine that would rapidly and economically delint cotton seed would be of great value. Before the invention of the Thomas delinter several delinting machines had been patented, but an examination of them shows that they differ in many material particulars from the Thomas machine, and, so far as appears from the record, not one of them was successful in its operation. We shall have occasion later to refer to them again.

A Thomas delinter was exhibited to the trial court and to this court at the hearing. Its several parts are shown in the drawings accompanying the patent. Any description we may be able to give will be greatly

aided by the following figure taken from the brief of the appellant, which represents the machine with its several parts adjusted:

The patent, claims, and the other evidence in the record show that the machine is constructed with a central horizontal shaft, supported by a frame at or near each end, with a drawing pulley on each end. On the shaft are placed a series of corrugated corundum wheels, 12 inches in diameter. Between the corundum wheels are space blocks. On the space blocks are stirrers, nearly flush with the corundum wheels. These

stirrers are to stir the cotton seed, and to push them towards the discharging end of the machine.   The corundum wheels fastened on the shaft are surrounded by a perforated metal casing, the perforations being large enough for the lint, but not the seed, to pass through them, the inside of the perforated casing being smooth.   This metal casing is situated about one inch from the rim of the corundum wheels.   Outside of this perforated casing is another metal casing, which is open at the bottom, and connects at the top with a suction fan, which draws the lint through the perforations when it has been scoured from the seed by the corundum wheels.   The cylinder of corundum wheels being put in motion by the belts, the seed pass into the machine at the top of the end marked "inlet."   They pass through the machine lengthwise, the machine being held close to the corundum wheels by the smooth perforated casing.   The seed are delinted by the wheels, and pass out at the bottom of the other end of the machine, marked "outlet," the lint as it is scoured off being separated from the seed by being sucked through the holes in the first casing.   Connected with the inlet end of the machine there is a down spout, 6 or 8 feet high, and a screw-shaped block of wood next to the first corundum wheel.   The feed of seed being continuous, the space between the cylinder and the perforated casing is filled, and is kept full, although the delinted seed are discharged at the outlet.   The rotation of the corundum wheels and the stirrers on the space blocks causes the circular or annular roll of seed to revolve, but at less speed than the corundum wheels.   The result is that the lint is removed from the seed, and the lint and seed separately discharged from the machine.

The Thomas patent and the original drawings do not show the feed screw or the screw-shaped block at the inlet.   The patent clearly shows, however, that the seed were to be fed to the machine at one end and to be discharged at the other.   The evidence shows that in the construction of the first machine a screw-shaped block of wood was placed under the feed spout and next to the first corundum wheel.   Later the feed screw was used.   It seems evident that some device—blades with slanting edges, a screw-shaped block, or a feed screw—is useful to start the seed in the right direction and push them through the machine.   The patent pointedly provided that they should enter at one end and be discharged at the other.   The feed spout being kept full, gravity and the motion of the machine would cause the seed to go in the direction intended toward the outlet.   The evidence shows, however, that the use of the feed screw or some equivalent device is of advantage in pushing the seed from the inlet to the outlet.   In the construction of the machine Thomas would not be confined to making an exact copy of his drawings and specifications.   It would be almost impossible to insert in the drawings and description every detail.   If the drawings and description furnished are sufficient for a mechanic skilled in the art to construct the device patented, they are sufficient.

We are of opinion that the failure to show a feed screw or an equivalent device in the drawings or the patent does not invalidate the patent.

Eighteen patents have been put in evidence as anticipations of the Thomas delinter.   They include patents for grain scourers, for bolting flour, for shaft hangers, for cleaning cotton seed, and several for de-

linting cotton seed. It is unnecessary to examine each of them separately to point out the differences between them and the Thomas machine. Generally, those of them that are intended to be delinters rely on the abrasion of the seed by two rough surfaces, whereas one main idea of the Thomas delinter is that the cotton seed shall be held by a smooth surfaced casing close to the corrugated corundum wheels. The conception of avoiding all roughness or abrading quality on the part of the casing is not evidenced in any one of the patents or machines prior to Thomas'. In his specifications it is said: "In constructing the perforations which form the lint outlet, care should be taken to avoid projections, roughness, or anything calculated either to interfere with the movement heretofore referred to of the annular body of seed or with the escape of the lint." The prior patents, on the contrary, usually rely on making both surfaces that come in contact with the seed rough, or in some way fashioning them that both surfaces should serve in taking the lint from the seed. The record, we think, shows that the delinting is successfully performed when the seed are held by a nonabrading smooth surface close against the delinting cylinder, and it is not shown that machines relying on two abrading surfaces have been successful. The prior patents that in some respects slightly resemble the Thomas delinter are wholly wanting in the devices necessary to continuously and successfully do the work of delinting. They are not susceptible of a continuous feed, or they do not separately discharge the seed and the lint, or they do not provide for the feed at one end and the passage of the seed through the machine lengthwise the machine and the discharge continuously of the delinted seed at the other.

The grant of letters patent for the Thomas delinter is prima facie evidence that Thomas was the inventor of the device described in the letters and of its novelty. Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct. 970, 29 L. Ed. 1017. The burden, therefore, was on the defendant to sustain the defense that the invention had been anticipated and want of novelty.

The evidence does not leave us in doubt that the Thomas delinter was operative. Dr. Thomas testifies that on the first machine made he and others delinted two car loads of seed. About 40 of the machines were made, and the evidence shows that several of them were operated successfully.

The statute provides that "any person who has invented or discovered any new and useful art, machine, manufacture or composition of matter, or any new and useful improvement thereof, not known or used by others in this country, * * * may * * * obtain a patent therefor." Rev. St. 4886 [U. S. Comp. St. 1901, p. 3382].

Without considering the claims asserted as new processes or methods, we are of opinion that the evidence shows that Thomas invented a new and useful machine, although it is a combination of known elements, and that the invention has novelty and utility. The fact that the machine is an aggregation of known devices does not show that it is lacking in novelty. A machine is of necessity made of known things. The originality is often in the new combination. In no prior delinter do we find united all of the attributes of Thomas', nor is it shown that any prior delinter produced the desired results. It cannot be said, we

think, that it is lacking in novelty, unless the combination he made was one so obvious that it would occur to any one skilled in the art. That the combination is not one evident and easily seen is shown by the fact that Delamare, Gennert, Crawford, and others struggled unsuccessfully to produce a practical working delinting machine. The court is of opinion that the Thomas patent, No. 503,103, is a valid patent for a mechanical device for delinting cotton seed, shown by the drawings, patent, and claims from 5 to 8, inclusive.

2. The remaining question is as to the infringement. There is no conflict in the evidence that the defendant has made, used, leased, and offered to lease a machine called the Baxter delinter, which is described in patent No. 659,840. Models of both machines have been before the trial court and are before this court. The question of the validity of the Baxter patent is not before us for decision. It might be a valid patent as an improvement of the Thomas delinter, and yet an infringement of the Thomas patent, in so far as it copies and appropriates the invention of Thomas. "Two patents may both be valid when the second is an improvement on the first, in which event, if the second includes the first, neither of the two patentees can lawfully use the invention of the other without the other's consent." Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct. 970, 29 L. Ed. 1017. We are aided in the examination of this question of infringement by the evidence of experts, but their opinions are not conclusive. We must form our own opinion, based on all the evidence. With the two patents and the drawings and models before us, aided by the other evidence in the record, we are required to decide the question of infringement. Hardwick v. Masland (C. C.) 71 Fed. 887.

Both machines are constructed with a central horizontal shaft, supported by frames. In both machines on the shaft is formed a cylinder composed of a series of corundum wheels, mounted side by side, and containing circular grooves. In both stirrers are arranged between the corundum wheels to stir and lift the seed as the corundum cylinder revolves. Both machines have the perforated casing with the smooth interior surface, the perforations being of a size to permit the passage of the lint, but not the passage of the seed. In both machines there is an inlet for the seed at one end, and an outlet for the delinted seed at the other end. And both machines make the same provision for the continuous ingress of the seed, their passage through the machine lengthwise the machine, and the continuous egress of the delinted seed. Mr. Brown, the defendant's expert, in giving evidence as to the operation of the Thomas machine, did not have access to a Thomas machine. A sentence from his evidence shows how easily he changed a Baxter machine into a Thomas machine. He said:

"No machine like the Thomas patent being available, it was necessary to reconstruct one of the Baxter machines so as to approximate the structure of the Thomas machine. Accordingly, one of the Baxter machines was dismantled, and the alternating stones and toothed rings were slipped off from the shaft of the rotating drum, and the feed screw removed, and then there was slipped onto the shaft in alteration stones and metal rings carrying teeth which were not beveled in accordance with the Baxter patent, and which were not spirally disposed."

These changes made the. Baxter machine "substantially" like the Thomas machine.

An examination of the models, the drawings, and patents, and the descriptions of the two machines by the experts, show that in their mechanism and in their practical operation they are substantially the same. The only differences worthy of note, and in these respects the Baxter machine may be an improvement on the Thomas delinter, are that the casing in the Baxter machine is made somewhat larger in diameter at one end than at the other, and that the perforations at one end of the casing are made somewhat smaller than at the other; that the stirrers are shaped and arranged somewhat differently in the Baxter machine, and probably tend to push the seed along the cylinder more than those provided for in the Thomas patent; that the location of the seed outlet is slightly changed, and a swing door used to regulate the outflow of the seed; and a feed screw is used at the end of the corundum cylinder under the feed spout, Thomas having used blades with beveled faces. These changes may be substantial improvements, but the Baxter machine embraces the invention made by. Thomas. There is no substantial part of the Thomas machine that is not reproduced in the Baxter delinter. If it be conceded that improvements are added, it is nevertheless an infringement. Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017; Simmons v. Standard Oil Co. (C. C.) 62 Fed. 928; Robbins v. Dueber Mfg. Co. (C. C.) 71 Fed. 186; Pennington v. King (C. C.) 7 Fed. 462.

Our conclusion is that the complainant has a valid patent, which the defendant has infringed.

The decree of the Circuit Court dismissing the bill must therefore be reversed, and the cause remanded for further proceedings in conformity with this opinion; and it is so ordered.